10-2146-cr (L)
United States v. Stinson

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 5th day of April, two thousand twelve.

PRESENT:
         PIERRE N. LEVAL,
         ROBERT D. SACK,
         PETER W. HALL,
                  *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

                           *Appellee*,

         v.                                              Nos. 10-2146-cr (Lead)
                                                               10-2265 (Con)
                                                               10-3415 (Con)

MICHAEL STINSON, DAVID HARVIN, AND EUGENE STINSON,
AKA "NASTY,"

                           *Defendants-Appellants.*

_____

FOR DEFENDANTS-APPELLANTS:    BRUCE ROBERT BRYAN, Bryan Law Firm, Syracuse,
                              New York; JEREMY GUTMAN, Jeremy Gutman,
                              Attorney at Law, New York, New York; Eileen
                              Frances Shapiro, Law Office of Eileen Shapiro,
                              Brooklyn, New York.

FOR APPELLEE:                                   ROBERT SPECTOR Assistant United States Attorney
                                                (Felice Duffy, *on the brief*,) *for* David Fein, United
                                                States Attorney for the District of Connecticut, New
                                                Haven, Connecticut.

Appeal from the judgment of the United States District Court for the District of

Connecticut (Arterton, *J.*).   **UPON DUE CONSIDERATION**, **IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

This appeal arises out of the jury trial and conviction of Michael ("Michael") Stinson and

his son, Eugene ("Eugene") Stinson and the guilty plea of David Harvin.[1]  On March 9, 2010, a

jury found Eugene guilty of conspiracy to steal firearms from a federally licensed firearm dealer,

American Precision Manufacturing ("APM"), in violation of 18 U.S.C. §§ 922(u)(1), 924(i)(1) and

371; and theft of firearms from a federally licensed firearm dealer, in violation of 18 U.S.C. §§ 2,

922(u)(1) and 924(i)(1).   The jury also found Michael guilty of the same and the additional

offense of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and

924(a)(2).   On May 28, 2010, the district court sentenced Michael to 200 months' imprisonment.

On August 16, 2010, the district court sentenced Eugene to 120 months' imprisonment.

Eugene appeals his conviction on the basis that the district court committed a number of

errors including mishandling, to Eugene's detriment, Michael's testimony suggestive of a

vicarious entrapment defense.   Michael appeals his conviction on the grounds that his

non-guidelines sentence of 200 months' incarceration is substantively unreasonable and that he

was entrapped by the government.   Both defendants-appellants have filed, in addition to their

---

[1]  We have granted Attorney Eileen Shapiro's motion to be relieved as counsel for David Harvin,
pursuant to *Anders v. California*, 386 U.S. 738 (1967), and the government's motion for summary
affirmance; and denied Harvin's motion for the appointment of new counsel in an order filed
simultaneously with this one.

2

counseled briefs, *pro se* briefs raising a number of claims. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal. We elaborate only where necessary to explain our decision to affirm the judgments of conviction.

**Eugene's Appeal**

In his counseled brief, Eugene argues that the jury was erroneously permitted to consider Michael's testimony suggesting that Michael was vicariously entrapped by Eugene. In the first instance, Michael testified that Eugene had approached him and told Michael that Ameed Stevenson, the government's cooperating witness, had access to firearms through Stevenson's job at APM and wanted to get Eugene involved in an opportunity to steal some of those firearms. Michael explained that he had been hesitant to get involved with Stevenson. Michael's counsel then inquired about Eugene's response to that hesitation and before Michael answered, Eugene's counsel objected. The district court sustained the objection. Eugene now asserts that district court should have either struck the testimony or given the jury a curative or limiting instruction. Eugene's counsel neither asked for the testimony to be stricken nor requested a curative or limiting instruction. We therefore review for plain error. *United States v. Jakobetz*, 955 F.2d 786, 801-802 (2d Cir. 1992); *see also United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) ("[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"). Because the district court sustained the objection before Michael could answer the question, the district court

3

did not err, much less plainly err, in not striking the testimony or otherwise instructing the jury with specific regard to the testimony.

In the second instance, Michael testified that, on the night of the theft, Eugene told Michael that there were guns in the APM warehouse. Eugene's counsel initially objected to the testimony and asked for it to be stricken from the record. At sidebar Eugene's counsel argued that permitting Michael to testify with regard to statements Eugene made concerning the guns would "undermine my entire predisposition case," and he proposed that Michael's counsel be permitted to lead Michael through his testimony and suggested "[m]aybe if the question posed to Michael is more directed in a yes or no manner, did you do something as a result of, you know, being told something by your son?" When later asked by the district court if he wanted the testimony stricken or a limiting instruction given to the jury, Eugene's counsel stated that he wished not to draw attention to the issue and expressly decided against asking the district court strike the answer or give a limiting instruction. Eugene now argues Michael's testimony was so prejudicial to him that it deprived Eugene of a fair trial as it implied an admission of guilt on Eugene's part, and, as clarified during oral argument, Eugene asserts that the district court should have stricken the testimony when his counsel initially objected.

We find no error in the district court's delay in ruling on the objection in order to make a conscientious assessment of whether the statements were relevant and admissible, in the course of Michael's defense, as a co-conspirator's statement in furtherance of a conspiracy. *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998) ("Under Rule 403, relevant evidence may be excluded when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or

4

needless presentation of cumulative evidence. A district court is obviously in the best position to do the balancing mandated by Rule 403 [, and] [w]e will second-guess a district court only if there is a clear showing that the court abused its discretion or acted arbitrarily or irrationally. To avoid acting arbitrarily, the district court must make a 'conscientious assessment' of whether unfair prejudice substantially outweighs probative value.") (internal quotations and citations are omitted). Moreover, on Eugene's objection to this testimony, there were essentially three remedies available to him—mistrial, striking of the testimony (with or without instructions to the jury), or a limiting instruction. Eugene expressly declined the court's offer to strike the evidence or give a limiting instruction, and he did not request a mistrial. Accordingly, he "did not afford the court an available opportunity to do something about the problem." *United States v. Bautista,* 252 F.3d 141, 147 (2d Cir. 2001). This amounted to a waiver of his objection. *Cf. United States v. Quinones*, 511 F.3d 289, 321 (2d Cir. 2007) ("The law is well established that if, 'as a tactical matter,' a party raises no objection to a purported error, such inaction 'constitutes a true "waiver" which will negate even plain error review.'" (quoting *United States v. Kon Yu-Leung*, 51 F.3d 1116, 1122 (2d Cir. 1995)).

**Eugene's *Pro Se* Appeal**

In his *pro se* brief, Eugene raises a number of claims including allegations that the government and its agents violated his due process rights; the government misrepresented evidence during its closing argument; the government committed *Brady* and Jencks Act violations; the trial court abused its discretion; Stevenson perjured himself at trial; and that Eugene was entrapped as a matter of law.

Eugene's due process challenge is linked generally to his allegation that the government and its agents, namely the ATF and APM, violated his right to due process of law in the following ways: (1) the government allowed APM owners to tip off its employees about the investigation into the original firearms theft and to participate in the subsequent sting operation; (2) law enforcement agents showed Stevenson a photo lineup with Eugene's picture in it; (3) the law enforcement agents relied on information provided by Stevenson, who Eugene claims was not reliable; (4) on the night of the charged theft, ATF Special Agent Scott Riordan forced Stevenson, against his will, to open a door at APM for Michael and Harvin; and (5) the affidavit in support of Eugene's arrest warrant contained the false statement that Eugene had sold a firearm to another confidential informant on October 7, 2009 and that Special Agent Riordan testified in grand jury to the same false statement. Also, Eugene asserts that the district court erred by admitting evidence from Michael's cell phone because the ATF agent searched that telephone without a warrant. Eugene did not raise any of these claims below, and thus we review for plain error.

Eugene has not identified an error, much less a plain one, rising to the level of a deprivation of his due process rights. He did not move to suppress any evidence obtained as a result of the ATF's investigation and sting operation. *See United States v. Yousef*, 327 F.3d 56, 144 (2d Cir. 2003) (holding that issues not raised in pre-trial suppression motion are waived). He advances only conclusory statements and identifies no evidence to support his claims that Agent Riordan and Stevenson were lying. *See United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993). Any allegation of misconduct or interference by the ATF in the transaction between Stevenson and Eugene was embodied in Eugene's entrapment defense — an argument he made to the jury on which the jury was instructed, and which the jury ultimately rejected. Additionally, with regard

6

to Michael's cell phone, leaving aside whether he has standing to challenge it, the Government did obtain a search warrant for the phone, which Michael acknowledged at trial.

Eugene argues that the district court abused its discretion in applying a two-level enhancement pursuant to U.S.S.G. § 3B1.1 for his role in the offenses of conviction, and a six-level enhancement pursuant to U.S.S.G. § 2K2.1 because the offense involved twenty-nine firearms. At sentencing the district court determined that the evidence introduced at trial established that Eugene organized the theft and recruited Michael to help him and that, on the night of the theft, Michael and Harvin snuck into APM in the middle of the night, packed up twenty-nine guns in four duffle bags and carried sixteen of them out of APM with every intent to return immediately and steal the remaining thirteen firearms. Additionally, the district court determined that all twenty-nine firearms taken from APM and placed in duffle bags brought by Michael and Harvin were attributable to Eugene based on the "video . . . of the theft and based on Michael Stinson's testimony that he intended to go back" and because Eugene was a co-conspirator. The district court did not abuse its discretion in applying either enhancement.

We have conducted an independent review of the record and have considered all of Eugene's remaining claims on appeal and find each to be without merit. His judgment of conviction is AFFIRMED.

**Michael's Appeal**

Michael initially raised three issues in his counseled brief—whether the district court erred in finding certain prior convictions sufficient for finding that Michael is an armed career criminal, whether Michael was entrapped, and whether the district court's below guidelines sentence of 200

7

months' imprisonment is unreasonable.   In his reply brief, he conceded that his prior convictions form a sufficient basis for the district court's armed career criminal determination.

Michael continues to assert that he was entrapped as a matter of law.   The entrapment defense has two elements: "(1) government inducement of the crime, and (2) lack of predisposition on the defendant's part."   *United States v. Bala*, 236 F.3d 87, 94 (2d Cir. 2000) (internal quotation marks omitted).

Michael argues that Stevenson, at the government's direction, lured Michael to APM under the guise that Stevenson would provide Michael with scrap metal.   Stevenson then conducted a bait and switch with the scrap metal and guns and directed Michael to "take the guns" – a command that Michael instantly obeyed.   This was, in Michael's view, inducement.   *See Jacobson v. United States*, 503 U.S. 540, 548 (1992) ("Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute.").   Even if we agreed with Michael that Stevenson's single direction to "take the guns" was sufficient evidence of government inducement, the government otherwise proved that Michael was predisposed beyond a reasonable doubt to engage in the crime.   Predisposition may be shown by evidence of: "(1) an existing course of criminal conduct similar to the crime for which the defendant is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement."   *United States v. Brunshtein*, 344 F.3d 91, 101–02 (2d Cir. 2003). Michael's ready response to the inducement demonstrated that he was ready and willing without persuasion to commit the crime.   Michael's own testimony was that it only took him a "split

8

second" after Stevenson said, "[t]ake the guns" to decide that he was no longer interested in scrap metal and would receive a greater financial benefit by selling the guns. On this record, we do not agree that Michael was entrapped as a matter of law.

Michael next argues that a non-guidelines sentence of 200 months' incarceration was substantively unreasonable because (1) he suffers from severe medical conditions and therefore is entitled to a more lenient sentence; and (2) being 53, he presents a lower risk of recidivism than younger offenders and accordingly is entitled to a lesser sentence. "We review sentences for abuse of discretion, a standard that 'incorporates *de novo* review of questions of law (including interpretation of the [Sentencing] Guidelines) and clear-error review of questions of fact.'" *United States v. Bonilla*, 618 F.3d 102, 108 (2d Cir. 2010) (quoting *United States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008)). In so doing, we must "take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantage of district courts." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008). A sentence is substantively unreasonable only in the "rare case" where the sentence would "damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009), *cert. denied*, 131 S. Ct. 140 (2010).

At sentencing, the district court reviewed Michael's medical history including diagnoses, medication, and Michael's prison medical records. In light of Michael's medical history, the district court gave Michael a non-guidelines sentence. The district court's decision not to afford Michael's medical conditions additional weight did not result in substantive error. *See Cavera*, 550 F.3d at 191 (observing that "we do not consider what weight we would ourselves have given a

9

particular [sentencing] factor" but instead "whether the factor, as explained by the district court, can bear the weight assigned it under the totality of circumstances in the case.")   Additionally, the district court considered and rejected Michael's claim that his age reflected a lower risk of recidivism.   Her decision was based on Michael's extensive criminal history and that the reason for the apparent break in his criminal conduct was that he was incarcerated for a long period. More importantly, the district court noted that once released, Michael reoffended within the year by committing the crimes charged in this case.   Based on this record, it cannot be said that the district court's non-Guidelines sentence of 200 months' imprisonment which is ten months below the bottom of the applicable Guidelines range is substantively unreasonable.

**Michael's *Pro Se* Claims**

In his *pro se* brief, Michael, makes eleven arguments that can be categorized as follows: allegations of government misconduct during its summation; due process and jurisdictional claims; and discovery and evidentiary claims.   Additionally, in his *pro se* reply brief, Michael argues, in an effort to rebut the government's responses to his claims on appeal, that his trial counsel was ineffective in a number of ways.

Michael asserts that the government's rebuttal argument violated the so-called "Golden Rule" when the prosecutor asked the jury, in the context of discussing whether the defendants were induced to engage in the theft of firearms, "What would persuade you to do this?"   Defense counsel objected at the time and the prosecutor immediately withdrew the comment and rephrased the question as follows: "What would persuade an innocent person to commit the crime."   The government concedes that the initial question was inappropriate, but claims that the rephrased question was proper and merely paraphrased the district court's jury instruction on entrapment and

10

drew no objection. We conclude that the prosecutor erred but that this error, alone, does not justify reversal. *United States v. Young*, 470 U.S. 1, 11 (1985); *accord United States v. Modica*, 663 F.2d 1173, 1184 (2d Cir. 1981) ("Reversal is an ill-suited remedy for prosecutorial misconduct . . . ."); *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) (To warrant reversal, prosecutorial misconduct must "'cause[] the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process.'" (quoting *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999); *Shareef,* 190 F.3d at 78 ("Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'").

We have fully considered all of Michael's remaining claims on appeal and find each to be without merit. To the extent that Michael, in an effort to rebut the government's arguments that Michael waived certain claims or failed to take certain actions during the district court proceedings, now claims that his trial counsel was ineffective, we decline, without expressing any views on the merits of such a claim, to reach Michael's ineffective assistance claim raised for the first time on direct appeal. *United States v. Leone*, 215 F.3d 253, 256 (2d Cir. 2000).

For the foregoing reasons, the judgment of the conviction is AFFIRMED.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

11